# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JUDITH A. SORENSEN,

        Plaintiff,

v.                                                       Case No. 05-C-278

SBC UMBRELLA PLAN NO. 1,
THE AMERITECH SICKNESS & ACCIDENT
DISABILITY BENEFIT PLAN, and
SBC COMMUNICATIONS, INC.,

        Defendants.

## DECISION AND ORDER

       Judith Sorensen ("Sorensen") brought suit against the SBC Umbrella Plan No. 1 ("the SBC Umbrella Plan"), the Ameritech Sickness & Accident Disability Benefit Plan ("the Ameritech Plan"), and SBC Communications, Inc. ("SBC") (collectively "the Defendants") in the Circuit Court of Walworth County. Sorensen alleged, in her complaint, that the Defendants breached their fiduciary duty, in violation of § 404(a)(1) of the Employee Retirement Income Security Act ("ERISA"). The Defendants filed a Notice of Removal on March 14, 2005. Before the Court are both Sorensen's and the Defendants' motions for summary judgment.

- 1 -

## BACKGROUND

Sorensen was an employee of SBC, and worked as a Technical Support Specialist who assisted customers with orders and service inquiries. (Defendant's Proposed Findings of Fact ("DPFF") ¶ 12.) Her job entailed speaking and negotiating with customers, reading service orders, and operating a computer while sitting at a work station. (*Id.* at ¶ 13.) As an SBC employee, she participated in the disability benefit plan that SBC provided its employees. Specifically, she was a participant of the SBC Umbrella Plan, and its incorporated program, the Ameritech Plan. (*Id.* at ¶¶ 1-3.)

The Ameritech Plan provides that SBC "shall be the Plan administrator and the Sponsor of the Plan as these terms are defined in [ERISA]."[1] (*Id.* at ¶ 5.) SBC is also empowered to "delegate" any of its "responsibilities for the operation and administration of the Plan consistent with the Plan's terms." (*Id.* at ¶6.) SBC exercised its power to do just that, and delegated discretionary authority to determine eligibility for benefits to Sedwick Claims Management Services ("Sedwick"). (*Id.* at ¶ 7.) In this role, Sedwick operates as the SBC Medical Absence and Accommodation Resource Team ("SMAART"). (*Id.*) Decisions by SMAART to deny or limit claims for disability benefits may be appealed to the SMAART Quality Review Unit ("QRU"). (*Id.* at ¶ 8.)

---

[1] The Ameritech Plan states that the "Ameritech Corporation" shall be the Plan administrator, but after the Ameritech-SBC merger, any reference to "Ameritech Corporation" is also a reference to SBC.

The Ameritech Plan provides for sickness disability benefits for an employee who is disabled due to an off-the-job illness or injury. (*Id.* at 9.) "Disability" is defined by the Ameritech Plan as a "sickness or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last Company or Participating Company-assigned job with or without reasonable accommodations . . . ." (*Id.* at ¶10.)

Between September of 2003 and May of 2004, Sorensen experienced three family difficulties that adversely affected her psychological well being. First, in September of 2003, Sorensen was prevented from visiting her two infant granddaughters. (Plaintiff's Proposed Findings of Fact ("PPFF") ¶ 6.) Second, on December 30, 2003, Sorensen's son was in a severe automobile accident and suffered serious injuries. (*Id.* at ¶ 7.) And finally, on May 5, 2004, Sorensen's mother passed away. (*Id.* at ¶ 8.)

After her mother's death on May 5, 2004, Sorensen went on bereavement leave from May 5, 2004, to May 10, 2004. (*Id.* at ¶10.) She was scheduled to return to work on May 11, 2004, but failed to do so. (*Id.* at ¶ 11.) On May 17, 2004, Sorensen visited her doctor, Dr. Shannon Allen-Gryzwa, who is a general family practitioner. (DPFF ¶ 16.) Sorensen told Dr. Allen-Gryzwa that she was unable to sleep the past week, that she was experiencing increased anxiety, and that she was having hot and cold sweats. (*Id*.) Dr. Allen-Gryzwa concluded that Sorensen may have "insomnia, likely related to adjustment disorder" related to the loss of her mother and may have "some component of underlying anxiety." (*Id.*) Dr.

Allen-Gryzwa prescribed Zoloft and Valium and recommended that Sorensen see a psychiatrist if her condition continued to worsen. (*Id.*)

On May 18, 2004, SMAART granted Sorensen conditional sickness disability benefits from May 18, 2004, to June 7, 2004. (PPFF ¶ 17.) On May 28, 2004, SMAART sent Sorensen a letter requesting medical information to substantiate her claim for disability benefits. (DPFF ¶ 18.) SMAART requested that all pertinent medical records be submitted by June 4, 2004. (*Id.*)

On June 9, 2004, Sorensen again visited Dr. Allen-Gryzwa regarding her condition. (PPFF ¶ 16.) Dr. Allen-Gryzwa noted that Sorensen still was having problems sleeping, and also was experiencing anxiety, heart palpitations, and panic attacks. (*Id.*)

On June 14, 2004, a SMAART physician assistant reviewed the medical records submitted in support of Sorensen's claim for disability benefits, which did not yet include the notes from the June 9, 2004 appointment. (DPFF ¶¶ 19-20.) The physician assistant called Dr. Allen-Gryzwa to discuss the content of Sorensen's medical records. (*Id.* at ¶ 21). During this conversation, Dr. Allen-Gryzwa told the physician assistant about the June 9, 2004 appointment, and said that the second appointment was much the same as the first visit. (*Id.*) Specifically, Sorensen appeared "anxious" and "jittery" but suffered "no cognitive impairment." (*Id.*)

After reviewing the medical records and discussing the matter with Dr. Allen-Gryzwa, the SMAART physician assistant concluded that "the information did not support a

- 4 -

significant limitation of functioning as a consequence of observed functional impairment" and that "the primary problems noted [were] self-reported and not substantiated by direct observations by the doctor." (*Id.* ¶ 23.) Thus, SMAART determined that Sorensen was not "disabled," as defined by the Ameritech Plan, and denied Sorensen's claim for disability benefits. (*Id.* at ¶ 24)

On June 23, 2004, after being denied disability benefits, Sorensen provided SBC the medical documentation from the June 9, 2004 appointment with Dr. Allen-Gryzwa. (PPFF ¶ 18) One of the documents indicated that Sorensen "Yes, has a 'serious health condition' which is an illness, impairment, or physical, or mental condition that involves: . . . b. Absence Plus Treatment." (*Id.* at ¶ 19)

On July 20, 2004, Sorensen appealed SMAART's denial of her disability claim to the QRU. (DPFF at ¶ 27) On August 4, 2004, while Sorensen's appeal was still pending, Julie Jacobs, who is a psychologist, evaluated Sorensen. (*Id.* at ¶ 28) Sorensen reported to Jacobs that she had sleeping problems, a poor mood, a poor appetite, and a loss of interest in activities affiliated with her mother's death and son's accident. (*Id.*) Jacobs noted Sorensen had poor eye contact, but that she was well-groomed, cooperative, and had an intact thought process. (*Id.*) Jacobs diagnosed Sorensen with major depression and referred her to Dr. Richard Webb for a psychiatric evaluation. (*Id.*)

On August 10, 2004, Dr. Webb evaluated Sorensen. (*Id.* at ¶ 29) Dr. Webb noted Sorensen was "alert and oriented, memory was intact, mood was depressed" and that there

- 5 -

were "no psychotic symptoms." (*Id.*) He diagnosed Sorensen with major depression and prescribed Lexapro and Valium. (*Id.*)

On August 24, 2004, in connection with Sorensen's appeal of her benefits claim, SMAART received an independent assessment of Sorensen's psychological condition from Dr. Robert Sharpe, a board-certified psychiatrist and neurologist. (*Id.* at ¶ 31.) Dr. Sharpe analyzed the clinical findings in Sorensen's medical records, and found that the notes and data did not "support the findings of disability." (*Id.* at ¶ 34.) He also noted that there was no evidence of "hallucinations, delusions, suicidal or homicidal ideation, and no evidence of any other serious psychiatric illness." (*Id.*)

SMAART then sent a letter to Sorensen denying her appeal based upon Dr. Sharpe's conclusions. (*Id.* at ¶ 36.) The letter stated that "there was a lack of evidence of observable clinical finding, such as functional limitations that would have indicated you were unable to perform your job duties." (*Id.*) Furthermore, the letter concluded that "although some findings are referenced, none are documented to be so severe as to prevent you from performing the job duties of a Technical Support Specialist with our without reasonable accommodation . . . ." (*Id.*)

On January 28, 2005, Sorensen filed this action in the Circuit Court of Walworth County alleging a breach of fiduciary duty in violation of 29 U.S.C. § 1104(a)(1). On March 14, 2005, the Defendants filed a Notice of Removal. Subsequently, Sorensen and the

- 6 -

Defendants each filed a motion for summary judgment. Both of their motions are now pending before this Court.

## STANDARD OF REVIEW

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l*

*Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

I.   ERISA Fiduciary

Sorensen makes only one claim in his complaint – that the Defendants breached their fiduciary duty in violation of 29 U.S.C. § 1104. ERISA benefit plans, like the SBC Umbrella Plan and the Ameritech Plan, are not fiduciaries as defined by 29 U.S.C. § 1002(21). *See cf. Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997) ("to be a fiduciary, the individual or entity involved must exercise a degree of discretion over the management of the plan or its assets, or over the administration of the plan itself.") Accordingly, Sorensen's claim against the SBC Umbrella Plan and the Ameritech Plan must be dismissed.

II.   Alleged Breach of Fiduciary Duty

Sorensen argues that SBC violated its fiduciary duty by denying Sorensen's claim for disability benefits. The Court will review a fiduciary's decision to deny benefits de novo "unless the benefit plan gives the . . . fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a fiduciary is granted such discretion, the Court will review the

- 8 -

denial of benefits under the arbitrary and capricious standard. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

Sorensen and the Defendants agree that the SBC Umbrella Plan and the incorporated Ameritech Plan gave the plan administrator discretionary authority to grant or deny benefit plans and interpret the meaning of the plans. Accordingly, SBC's decision to deny Sorensen's claim for benefits is afforded "great deference" under the arbitrary and capricious standard. *Ruiz v. Continental Casualty Co.*, 400 F.3d 986, 991 (7th Cir. 2005). Under this deferential standard of review, it is not enough that the Court might disagree with the fiduciary's decision. *Id.* Rather, the only question is whether the fiduciary's decision was "completely unreasonable." *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005).

Sorensen has three primary arguments to support her claim. First, Sorensen argues that SMAART, which is the third party administrator of disability claims under the Ameritech Plan, had a conflict of interest and was biased in favor of SBC when rendering its judgment. When addressing such an allegation, the Court must presume that the fiduciary is acting neutrally unless a claimant provides "specific evidence of actual bias that there is a significant conflict." *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998). "The existence of a potential conflict is not enough." *Id.*

- 9 -

Sorensen has not provided any evidence of a significant conflict of interest. SBC contracted with a third party, Sedwick (operating as SMAART), to administer claims for benefits under the SBC Umbrella Plan and the Ameritech Plan. (DPFF ¶ 7.) There is no evidence that SMAART benefits financially from denying claims, and thus, there is no reason to believe that SMAART favored the interests of SBC over the interests of Sorensen. *See Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004) ("Unless an insurer or plan administrator pays its staff more for denying claims than for granting them, the people who actually implement these systems are impartial.")

Sorensen also argues that SMAART acted arbitrarily and capriciously by unreasonably relying upon the opinions of its physician assistant and Dr. Sharpe. According to Sorensen, the physician assistant was not qualified to render an opinion. Furthermore, Sorensen contends that Dr. Sharpe's opinion was unreliable because he never examined Sorensen.

Sorensen presents no evidence that the SMAART physician assistant was not qualified to review Sorensen's medical records to determine whether Sorensen was disabled. Rather, the evidence indicates that the physician assistant conducted a fair and full review of Sorensen's medical records. The physician assistant reviewed Dr. Allen-Grywa's notes from the May 17, 2004 appointment and also contacted Dr. Allen-Gryzwa to obtain clarification and additional information about Sorensen's condition. During this conversation, Dr. Allen-Gryzwa told the physician assistant about Sorensen's second visit of June 9, 2004. Dr. Allen-

Gryzwa indicated that the second appointment was much the same as the first visit. Sorensen appeared "anxious" and "jittery" but suffered "no cognitive impairment."

Contacting a claimant's treating physician, as the SMAART physician assistant did here, is evidence that a claim denial was not arbitrary and capricious. *See cf. Crespo v. Unum Life Ins. Co. of Am.*, 294 F.Supp.2d 980, 994 (N.D. Ill. 2003) (finding that the defendant did not make a full and fair assessment of the plaintiff's benefit claim because it did not contact any of her treating physicians). There is nothing in the medical records that the physician assistant reviewed, nor in the physician assistant's conversation with Dr. Allen-Gryzwa, that indicates that the physician assistant was acting "completely unreasonable" in opining that Sorensen was able to work.

In addition, SMAART was not arbitrary and capricious by relying upon Dr. Sharpe's opinion. Indeed, seeking an independent expert opinion is often evidence of a careful and impartial decision, not an arbitrary and capricious one. *See Hightsue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998) ("Seeking independent expert advice is evidence of a thorough investigation . . . .")[2]

Finally, Sorensen argues that Dr. Sharpe did not apply the Ameritech Plan's definition of "disability." The Ameritech Plan defines "disability" as a "sickness or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing

---

[2] Sorensen also claims that Dr. Sharpe was biased in favor of SBC. However, like with her claim that SMAART was biased, Sorensen provides no evidence that Dr. Sharpe would benefit financially by offering an opinion suggesting that Sorensen was not disabled. Thus, Sorensen's claim that Dr. Sharpe was biased must be rejected.

- 11 -

the duties of his/her last Company or Participating Company-assigned job with or without reasonable accommodations . . . ." (DPFF ¶ 10.) Yet, Sorensen claims that Dr. Sharpe used the wrong definition of "disability" when Dr. Sharpe noted, near the end of his report, that "[t]here is no evidence of hallucinations, delusions, suicidal or homicidal ideation, and no evidence of any other serious psychiatric illness." (*Id.* at ¶ 34.)

Sorensen's interpretation of Dr. Sharpe's report is inaccurate. Dr. Sharpe merely listed some symptoms, which if they existed, might have supported a finding that Sorensen was unable to work. There is no evidence that Dr. Sharpe used the wrong definition of "disability," and as such, this aspect of his report is not a basis for overturning the decision to deny Sorensen disability benefits.

Given the great deference that this Court must afford SBC, the Court must reject Sorensen's request to grant her disability benefits, and grant the Defendants' motion for summary judgment.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Sorensen's Motion for Summary Judgment (Docket No. 24) is **DENIED**.

The Defendants' Motion for Summary Judgment (Docket No. 15) is **GRANTED**.

The clerk is directed to close this case and enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of February, 2006.

                                        **BY THE COURT**

                                        s/ Rudolph T. Randa
                                        **Hon. Rudolph T. Randa**
                                        **Chief Judge**